Case No. 13-6574

# United States Court of Appeals
# for the Sixth Circuit

Dede Stratton v. Portfolio Recovery Associates, LLC

Appeal from a dismissal with prejudice entered

by the U.S. District Court for the Eastern District of Kentucky

Appellant's brief submitted by,

/s/ James H. Lawson

James H. Lawson
Lawson at Law, PLLC
4055 Shelbyville Road
Suite B
Louisville, KY 40207

## Corporate Disclosure Form

Pursuant to 6th Cir. R. 26.1, Appellant, Dede Stratton, makes the following disclosure:

1.     Are said parties a subsidiary or affiliate of a publicly owned corporation? No.

2.     Is there a publicly-owned corporation, not a party to the appeal, that has a financial interest in the outcome? No.

# Table of Contents

Corporate Disclosure Form                                             i

Table of Authorities                                                iv

Statement in Support of Oral Argument                 1

Jurisdictional Statement                                     2

Statement of Issues                                         3

Statement of the Case                                    4

I.       Procedural History                                  4

II.      The District Court's Ruling                    6

Summary of the Argument                              7

Argument                                                11

I.       Standard of Review                               11

II.      The FDCPA                                      12

III.    The District Court Erred in Dismissing Ms. Stratton's First     14
         Amended Complaint

         A.      GE Money Bank could not Recover Statutory Interest    14
                      At the Legal Rate under KRS 360.010 on Ms. Stratton's
                      Credit Card Account

                 i.       The District Court's Construction of KRS 360.010    16
                               is Contrary to the Plain Language of the Statute

                 ii.      The District Court's Construction of KRS 360.010    18
                               is Unconstitutional

| | | | |
|---|---|---|---|
| | iii. | The District Court's Construction of KRS 360.010 Leads to an Absurd Result | 20 |
| | iv. | The District Court's Ruling Violates TILA | 21 |
| | v. | The District Court's Ruling Violates Kentucky's Law of Assignments | 28 |
| B. | | PRA's Allegations in its State-Court Complaint were not Aspirational | 29 |
| | i. | *Argentieri* is Distinguishable | 30 |
| IV. | | Ms. Stratton's First Amended Complaint States Valid Claims for Relief under the FDCPA | 32 |
| A. | | Violation of 15 U.S.C. §1692e(2)(A) | 32 |
| | i. | KRS 360.010 is not Self-Executing | 33 |
| | ii. | The Allegations in PRA's State Court Complaint Falsely Represent the Character, Amount, or Legal Status of Ms. Stratton's Debt | 35 |
| B. | | Violation of 15 U.S.C. §1692f(1) | 36 |
| C. | | Violation of 15 U.S.C. §1692e(5) | 38 |
| V. | | The First Amended Complaint Alleges the GE Money Bank Waived all Interest on Ms. Stratton's Credit Card Account after Charging off the Debt | 42 |
| Conclusion and Relief Requested | | | 44 |
| Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C) | | | 45 |
| Certificate of Service | | | 45 |
| Designation of Relevant District Court Documents with Page ID # Range | | | 45 |

# Table of Authorities

## Federal and State Cases

*Argentieri v. Fisher Landscape, Inc.*, 15 F.Supp.2d 55 (D. Mass 1988)          29-30

*Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982)          12

*Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008)          12

*Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2d Cir. 1993)          13

*Bradshaw v. Hilco Receivables, LLC*, 765 F.Supp.2d 719 (D. Md. 2011)          39

*Brown v. Card Serv. Ctr.*, 464 F.3d 450 (3d Cir. 2006)          13

*Cacace v. Lucas*, 775 F.Supp. 502 (D. Conn 1990)          12

*Cadle Co. v. Steiner*, 2011 WL 925450 (Conn. Super. Ct. Feb. 10, 2011)          37

*Carrizosa v. Stassinos*, 2010 WL 144807 (N.D. Cal. Jan. 10, 2010)          38

*Chapman v. United States*, 500 U.S. 453, 114 L. Ed. 2d 524, 111 S. Ct. 1919 (1991)          20

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162 (9th Cir. 2006)          13

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993)          13

*Delawder v. Platinum Fin. Servs. Corp.*, 443 F.Supp.2d 942 (S.D. Ohio 2005)          41

*Duffy v. Landberg*, 215 F.3d 871 (8th Cir. 2000)          37

*Egletes v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 3025236 (D. Conn. July 30, 2010)          38

*Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504 (6th Cir. 2007)          12

*Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783 (S.D. Ohio 2006)          31, 39

*Fuller v. Becker & Poliakoff, P.A.*, 192 F.Supp.2d 1361 (M.D. Fla. 2002)    36

*GE v. Cain*, 236 S.W.3d 579 (Ky. 2007)    12

*Gionis v. Javitch, Block, & Rathbone, LLP*, 238 F. App'x 24 (6th Cir. 2007)    36, 39-42

*Gonzales v. Arrow Fin. Servs., LLC,* 660 F.3d 1055 (9th Cir. 2011)    4

*Griffin v. Oceanic Contractors*, 458 U.S. 564, 102 S. Ct. 3245, L. Ed 2d 973 (1982)    21

*Harrington v. CACV of Colorado, LLC*, 508 F.Supp.2d 128 (D. Mass 2007)    38

*Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006)    13

*Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)    36

*In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002)    38

*James v. Sevre-Duszynska*, 173 S.W.3d 250 (Ky. Ct. App. 2005)    20

*Jarvis v. First Resolution Inv. Corp.*, 2012-Ohio-5653, P40, 2012 Ohio App. LEXIS 4904, 2012 WL 6042693 (Ohio. Ct. App., Summit County 2012)    31

*Kentucky Utilities Co. v. Jackson County Rural Electric Cooperative Corp.*, 438 S.W.2d 788, 790 (Ky. 1968)    20

*Lewis v. Quaker Chem. Corp.*, 2000 U.S. App. LEXIS 22321, 20 n.2 (6th Cir. Ky. Aug. 24, 2000)    20

*Marchant v. U.S. Collections West, Inc.*, 12 F.Supp.2d 1001 (D. Ariz. 1998)    38-39

*McCabe v. Eichenbaum & Stylianou, LLC*, CIV.A. 11-7403 MAS, 2012 WL 6624229 (D. N.J. Dec. 19, 2012)    34

*McCollough v. Johnson, Rodenberg & Launiger*, 587 F.Supp.2d 1170     31
     (D. Mont. 2008)

*McCollough v. Johnson, Rodenberg & Launiger, LLC*, 637 F.3d 939     31
     (9th Cir. 2011)

*McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829,     25-26
     2013 WL 4028947 (E.D. Mich Aug. 7, 2013)

*Melillo v. Shendell & Assocs., P.A.*, 2012 WL 253205 (S.D. Fla. Jan.     37
     26, 2012)

*Nikkel v. Wakefield & Associates, Inc.*, No. 10-CV-02411-PAB-CBS,     34
     2012 WL 5571058 (D. Colo. Nov. 15, 2012)

*Performance Contracting, Inc. v Seaboard Sur. Co.*, 163 F.3d 366     12
     (6th Cir. 1998)

*Pignataro v. Port Auth.*, 593 F.3d 265 (3d Cir. 2010)     34

*Poirier v. Alco Collections, Inc.*, 107 F.3d 347 (5th Cir. 1997)     38

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000)     37

*Prosoft Automation, Inc. v. Logan Aluminum, Inc.*, 2006 WL 1228773     17
     (W.D. Ky. Apr. 28, 2006)

*Reliable Mech., Inc. v. Naylor Indus. Servs., Inc.*, 125 S.W.3d 856     17, 23
     (Ky. Ct. App. 2003)

*Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174 (W.D. NY 1988)     13

*Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996)     13

*Sanz v. Fernandez*, 633 F.Supp.2d 1356 (S.D. Fla. 2009)     36

*Stojanovski v. Strobl and Manoogian, P.C.*, 783 F. Supp. 319 (E.D.     13
     Mich. 1992)

*Thomas & Betts Corp., Inc. v. A & A Mech., Inc.*, 2008 WL 2696877          17
    (Ky. Ct. App. July 11, 2008)

*Union Trust, Inc. v. Brown*, 757 S.W.2d 218 (Ky. Ct. App. 1988)          18-19

*United States v. Honaker,* 5 F.3d 160 (6th Cir. Tenn. 1993)          12

*United States v. National Financial Services, Inc.*, 98 F.3d 131          13
    (4th Cir. 1996)

*Whayne Supply Co. v. Morgan Const. Co.*, 440 S.W.2d 779 (Ky. 1969)          28

**Federal Statutes, Rules, and Regulations**

15 U.S.C. §1601 (TILA)          10, 16, 21

15 U.S.C. §1692e          12

15 U.S.C. §1692e(2)(A)          32, 35

15 U.S.C. §1692e(5)          7, 33, 39-43

15 U.S.C. §1692e(10)          41

15 U.S.C. §1692f(1)          33, 37-39

15 U.S.C. §1692k(d)          2

26 U.S.C. §166(a)(2)          27

28 U.S.C. §1291          2

28 U.S.C. §1331          2

Fed. R. Civ. P. 12(b)(6)          11

12 C.F.R. §226.4(a)          22

12 C.F.R. §226.4(b)(1)          24

12 C.F.R. §226.5(b)(2)(i)                                        10, 22

12 C.F.R. §226.7                                                 22

Uniform Retail Credit Classification and Account Management Policy,    26
    65 FR 36903

**Kentucky Statutes**

KRS 360.010                                                     passim

KRS 360.040                                                     18, 33

**Other State Statutes**

Colorado Revised Statues §5-12-102                              34

**Secondary Sources**

22 Am. Jur. 2d *Damages* §462 (updated February 2013)          23

47 C.J.S. *Interest & Usury* §106 (updated September 2012)     23

BankSpider.com, "GE Money Bank"                                 27
    (http://www.bankspider.com/chargeoffs/ge-money-bank-chargeoffs.html;
    visited July 14, 2013)

Black's Law Dictionary (9th ed. online 2009)                   30

Risk Management Manual of Examination Policies, Federal Deposit    26
    Insurance Corporation (FDIC), Section 3.2, "Loans"
    (http://www.fdic.gov/regulations/safety/manual/section3-2.pdf;
    last updated April 2005)

Robert M. Hunt, Collecting Consumer Debt in America, FED. RES.    4
    BANK K OF PA BUS. REV. 15 (2007)

## Statement Concerning Oral Argument

Appellant requests oral argument. This case potentially affects tens of thousands of Kentucky citizens. And the case presents an issue that this Court has not yet directly decided and on which there is a split of authority: whether 15 U.S.C. § 1592e(5) applies to both threats to take illegal actions to collect a debt and completed illegal acts to collect a debt.

## Jurisdictional Statement

<u>District Court</u>: The United States District Court for the Western District of Kentucky had jurisdiction of this case under 28 U.S.C. § 1331 and the FDCPA, 15 U.S.C. §1692k(d).

<u>Court of Appeals</u>: The Sixth Circuit Court of Appeals has jurisdiction under 28 U.S.C. § 1291. Appellant timely filed with this Court a Notice of Appeal from the District Court's Opinion and Order dismissing Appellant's complaint with prejudice.

## Statement of Issues

I.      Whether an attempt to collect interest neither authorized by agreement nor permitted by law in a debt-collection complaint violates the Fair Debt Collection Practices Act ("FDCPA").

II.     Under KRS 360.010, the legal rate of interest of 8% per annum only applies in the absence of a contractual rate. May a party to an agreement with a contractual rate of interest waive its contractual right to interest and still elect to accrue interest at the statutory rate of interest without notice?

III.    After charging off Ms. Stratton's credit card debt, GE Money Bank did not send Ms. Stratton any periodic statements. In order to impose and accrue statutory interest at the legal rate of 8% per annum, was GE Money Bank required to send Ms. Stratton periodic statements under the Truth in Lending Act ("TILA"). That is, does interest accrued and imposed at the legal rate of 8% per annum in lieu of contractual interest constitute a "finance charge" under TILA?

IV.     PRA's state-court complaint alleged that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008." Would an unsophisticated consumer have understood that PRA was merely requesting principal and interest from the trial court rather than affirmatively representing that Ms. Stratton owed PRA these amounts?

V.      The district court ruled that 15 U.S.C. § 1692e(5) only applies to threats to take illegal actions to collect a debt. The district court rejected an opinion by this Court indicating that completed illegal acts to collect a debt also violate the FDCPA. Does a debt collector violate the FDCPA by committing an act that cannot be legally taken in an attempt to collect a debt or does the Act only prohibit threats to take actions that cannot be legally taken?

## Statement of the Case

### I.    Procedural History

Appellee, Portfolio Recovery Associates ("PRA"), is in the business of purchasing charged-off debts, including credit card debt. Amended Complaint. at ¶4, RE 10, **Page ID# 91.** PRA typically purchases these debts for somewhere between 4% and 5% of the face value of the debt.[1] *Id.* PRA purchased a credit-card debt owed by Appellant Dede Stratton, which was originated by GE Money Bank, F.S.B. *Id.* at ¶¶11-15, **Page ID# 91-92**. GE Money Bank charged off Ms. Stratton's credit card debt on December 19, 2008, with $2,630.95 due on the date on the date of charge off. *Id.* at ¶¶ 16-17, **Page ID# 92**. PRA purchased Ms. Stratton's credit card debt from GE Money Bank on January 15, 2010, which is about 13 months after GE Money Bank charged off Ms. Stratton's credit card debt. *Id.* at ¶12, **Page ID# 91**. At the time of purchase, the face value of the debt was still $2,630.95. *Id.* at ¶18, **Page ID# 92**. So GE Money Bank accrued no interest on the Ms. Stratton's credit card account after charging it off, and PRA paid no more than $132.00 for Ms. Stratton's GE Money Bank credit card debt.

---

[1] *See e.g.*, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1059 (9th Cir. 2011) (noting  a federal reserve estimate "that the average price for purchase of an obsolete debt at $0.045 per dollar") (quoting Robert M. Hunt, Collecting Consumer Debt in America, FED. RES. BANK K OF PA BUS. REV. 15 (2007)).

PRA filed suit against Ms. Stratton on June 20, 2012 in the Scott District Court. *Id.* at ¶¶7-9, **Page ID# 91**. In its Complaint, PRA alleged that Ms. Stratton owed PRA the full face value of the amount of the debt plus 8% interest from December 19, 2008. *Id.* at ¶9. But PRA later supplied through discovery an affidavit by Dwayne E. Davis, a Custodian of Records for PRA that directly conflicts with the allegations in its state-court complaint concerning its right to statutory prejudgment interest. The Davis affidavit avers in pertinent part:

> 4.    . According to the records transferred to the Account Assignee from Account Seller, and maintained in the ordinary course of business by the Account Assignee, there was due and payable from **DEDE STRATTON** ("Debtor and Co-Debtor") to the Account Seller the sum of **$2,630.95** with the respect to account number **ending in 0265** as of the date of **12/19/2008** with there being no known un-credited payments, counterclaims or offsets against the said debt as of the date of the sale.
>
> 5.    According to the account records of said Account Assignee, after all known payments, counterclaims, and/or setoffs occurring subsequent to the date of sale, Account Assignee claims the sum of **$2,630.95** as due and owing as of the date of this affidavit.

Exhibit B, RE 10-2, **Page ID# 99.**

The Davis affidavit necessarily implies that there was no accrued interest on Ms. Stratton's credit card debt prior to PRA's purchase of the debt. But its state-court complaint attempted to collect prejudgment interest from Ms. Stratton on the full face amount of the debt for a period of over a year before PRA had any interest in the debt and during which time the original creditor accrued no interest on the debt.

Ms. Stratton brought suit against PRA alleging that PRA violated the FDCPA by attempting to collect interest on her GE Money Bank debt which it had no legal

right to collect. Complaint, RE 1. PRA moved to dismiss the complaint for failure to state a claim. Motion to Dismiss, RE 5. In conjunction with her response to the motion to dismiss, Ms. Stratton moved to file her first amended complaint. Motion to Amend, RE 7. The district court granted the motion to amend, Order, RE 9, and denied PRA's first motion to dismiss. Order, RE 11. Instead of answering the first amended complaint, PRA filed a second motion to dismiss. Motion to Dismiss, RE 12, **Page ID# 101-117.** The district court granted PRA's second motion to dismiss. Memorandum Opinion, RE 17, **Page ID# 175-191.** This appeal followed.

## II.    The District Court's Ruling

The district court dismissed Ms. Stratton's Complaint based on its conclusion that her first amended complaint failed to state a claim for PRA's violations of the Fair Debt Collection Practices Act. In particular, the district court erroneously construed KRS 360.010 as allowing GE Money Bank the option of either collecting a contract rate of interest from Ms. Stratton or a statutory right under KRS 360.010 to accrue prejudgment interest at the legal rate of 8% per annum. But the district court correctly construed KRS 360.010 such that PRA did not have a present right to impose interest at the legal rate of 8% per annum. That is, prejudgment interest under KRS 360.010 is not self-executing. Rather, prejudgment interest at the legal rate is compensation available only through a duly entered judgment. But from this correct, latter construction of the statute, the district court incorrectly reasoned

PRA's affirmative allegation in the state court complaint that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until the date of judgment" was merely an aspirational request to the trial court, which "even an unsophisticated consumer would have understood . . . was just a request [for interest], and would not have been misled by it." Finally, the district court construed 15 U.S.C. § 1692e(5) as only applying to attempts to commit illegal acts, but not to completed illegal acts.

## Summary of the Argument

This is case of greed gone too far. Ms. Stratton's first amended complaint is based on the simple premise that PRA cannot recover statutory, prejudgment interest from Ms. Stratton for a time before it had any legal interest in the debt owed by her.

Ms. Stratton applied for and received a credit card from GE Money Bank. Unfortunately, she fell on hard economic times and defaulted on the credit card. GE Money Bank eventually charged off the credit card debt in the amount of $2,630.95 on December 19, 2008. For prudent business reasons, GE Money Bank waived its right to accrue any interest on Ms. Stratton's debt after it charged off the debt. (There is no dispute that GE waived its contractual right to accrue interest on Ms. Stratton's credit card debt from the date of charge off through the date of sale of the debt.) GE Money Bank retained Ms. Stratton's credit card debt for some thirteen months before selling it to PRA on January 15, 2010 as part of a large portfolio of charged-off credit

card debts. The face value of Ms. Stratton's debt was still $2,630.95 at the time of sale.

PRA filed suit against Ms. Stratton in Scott District Court on June 20, 2012 to collect the charged-off GE Money Bank credit card debt. PRA's state-court complaint affirmatively alleged that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until the date of judgment." So PRA's state-court complaint alleged that Ms. Stratton owed PRA 8% per annum on the full face value of the debt for some thirteen months *before* it acquired the debt.

Ms. Stratton filed the instant suit alleging that PRA violated the FDCPA by attempting to collect interest from her that it had no legal right to recover. In particular, the first amended complaint alleges that PRA may not collect prejudgment interest at the legal of 8% per annum under KRS 360.010 for the thirteen months before PRA had any legal interest in Ms. Stratton's debt. PRA moved to dismiss Ms. Stratton's complaint on two separate grounds: (1) PRA had an independent statutory right to seek prejudgment interest under KRS 360.010, and (2) GE Money Bank assigned PRA the right to seek legal prejudgment interest under KRS 360.010.

The district court did not address PRA's argument that it had an independent right to seek prejudgment interest under KRS 360.010. But the district court agreed

-8-

with PRA that it had been assigned a right from GE Money Bank to collect prejudgment interest from Ms. Stratton under KRS 360.010.

The district court construed KRS 360.010 such that, after waiving its contractual right to interest from Ms. Stratton, GE Money Bank could elect to recover prejudgment interest at the legal rate of 8% per annum under KRS 360.010. In other words, the district concluded that GE Money Bank was not bound by the contractual rate of interest in its written agreement with Ms. Stratton. Instead, the district court concluded that GE Money Bank had the option of either charging Ms. Stratton the contractual rate of interest *or* electing to seek to recover statutory prejudgment interest against her in a collection complaint. The district court construction of KRS 360.010 is wrong for multiple reasons:

- Contrary to the plain language of the statute. KRS 360.010 plainly provides that parties to an agreement for interest in excess of the legal rate of 8% per annum are bound by the contract rate of interest. The district court's construction on KRS 360.010 is contrary to this clear language.

- Unconstitutional. The district court construed KRS 360.010 as providing creditors the right to pick and choose whether to collect the contract rate of interest or the statutory legal rate of interest. This impairs the obligation of contracts in violation of the Kentucky constitution.

- Absurd Result. The district court's construction of KRS 360.010 as being optional upon waiver of contractual interest leads to the absurd result that a creditor, which is a party to a contract with an interest rate lower than the legal rate, could opt into the higher rate of 8% by waiving contractual interest.

- Violation of TILA. Under 12 C.F.R. §226.5(b)(2)(i) as it was in effect at the time of charge off and as it is currently in effect, GE Money Bank was required to send periodic statements if it continued to impose a finance charge or accrue

-9-

interest on Ms. Stratton's credit card account. Construing KRS 360.010 as permitting GE Money Bank to accrue prejudgment interest without sending periodic statements violates TILA.

- <u>Violation of the Law of Assignments</u>. The district court's construction of KRS 360.010 gives PRA greater rights to interest than the original creditor, GE Money Bank, in violation of Kentucky's law of assignments.

Next, the district court erred in construing the affirmative allegations in PRA's state-court complaint as being purely aspirational. This error is based in large part on the district court's repeated mischaracterization that PRA's demand for 8% prejudgment interest was contained in PRA's prayer for relief. This is wrong. Paragraph 4 of PRA's state-court complaint clearly and plainly alleges in the body of the complaint that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until the date of judgment…." Allegations in a complaint are substantively different than the complaint's prayer for relief. This substantive difference distinguishes this case from the cases on which the district relied in concluding that PRA's claims were aspirational.

Finally, the district court erred in ruling that Ms. Stratton's first amended complaint does not allege that GE Money Bank waived all interest on Ms. Stratton's credit card account after charging it off. The first amended complaint and Ms. Stratton's claims for relief are founded on demonstrable allegations that GE Money Bank did not charge any interest on Ms. Stratton's credit card debt. *Any interest* includes statutory prejudgment interest under KRS 360.010. PRA violated the

FDCPA by attempting to collect interest from Ms. Stratton that GE Money Bank did not accrue on the debt. These allegations and the Davis affidavit attached as an Exhibit to Ms. Stratton's first amended complaint establish that there was no accrued interest—neither contractual nor statutory—due on Ms. Stratton's credit card debt when PRA acquired the debt from GE Money Bank. Therefore, the district court erred in ruling that the first amended complaint does not encompass a claim based on GE Money Bank's waiver of statutory prejudgment interest, assuming GE Money Bank had a right to prejudgment interest under KRS 360.010.

**Argument**

## I.    Standard of Review

This Court

> review[s] de novo a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6). We must read all well-pleaded allegations of the complaint as true. Our review is essentially the same as the district court's; we take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then dismissal is proper. A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.

*Performance Contracting, Inc. v. Seaboard Sur. Co.*, 163 F.3d 366, 369 (6th Cir. 1998) (internal citations and footnotes omitted).

This case also concerns the district court's construction of KRS 360.010, which is reviewed de novo. "Construction of a statute is a question of law, and thus receives de novo review." *United States v. Honaker*, 5 F.3d 160, 161 (6th Cir. Tenn. 1993); *accord GE v. Cain*, 236 S.W.3d 579, 589 (Ky. 2007).

## II.     The FDCPA

The purpose of the Fair Debt Collection Practices Act is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The language of the Act is "extraordinarily broad, crafted in response to what Congress perceived to be a widespread problem." *Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir.2008) (citation omitted). "Courts have characterized the FDCPA as a strict liability statute, meaning that a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir.2007) (citations omitted). Because "the FDCPA is a strict liability statute, proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace v. Lucas*, 775 F. Supp. 502, 505 (D. Conn. 1990). *See also Stojanovski v. Strobl and  Manoogian, P.C.*, 783 F. Supp. 319, 323 (E.D. Mich. 1992); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 178-179 (W.D.N.Y. 1988). Moreover, "[b]ecause the Act imposes

strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1176 (9th Cir. 2006); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

The question of whether a debt collector's conduct violates the FDCPA is determined by analyzing it from the perspective of the "least sophisticated debtor." *United States v. National Financial Services*, *Inc.*, 98 F.3d 131, 135-136 (4th Cir. 1996); *accord Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 329 (6th Cir. 2006); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006). "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

Unlike many other states, Kentucky does not have any state laws or regulations that apply to debt collectors. So the FDCPA is the sole legal check on the massive multi-million dollar debt-buying and collecting industry operating in this state. The debt-collection industry affects tens of thousands of Kentucky citizens each year, most of whom are already in financial distress and have little meaningful access to the legal system. So the FDCPA is of vital importance to the citizens of the Commonwealth.

### III.    The District Court Erred in Dismissing Ms. Stratton's First Amended Complaint

The district court's dismissal of Ms. Stratton's first amended complaint is based on the district court's erroneous construction of KRS 360.010 and erroneous interpretation of the allegations in PRA's state-court complaint. The argument below first address these errors. This argument is followed by demonstrating that, under the correct construction of KRS 360.010 and interpretation of PRA's state-court complaint, Ms. Stratton's first amended complaint states a valid claim for relief against PRA. The argument concludes by demonstrating that the first amended complaint necessarily includes allegations that PRA violated the FDCPA by attempting to collect prejudgment interest under KRS 360.010 that GE Money Bank waived the right to accrue, assuming that GE Money Bank had any rights under KRS 360.010.

### A.    GE Money Bank could not Recover Statutory Interest at the Legal Rate under KRS 360.010 on Ms. Stratton's Credit Card Account

GE Money Bank charged off Ms. Stratton's credit card account on December 19, 2008. Amended Complaint at ¶¶11-19, RE 1, **Page ID# 91**. The amount due on Ms. Stratton's credit card debt at the time of charge off was $2,630.95. *Id.* PRA purchased Ms. Stratton's credit card debt from GE Money Bank. *Id.* The amount due on Ms. Stratton's credit card debt on the date of sale was $2,630.95. *Id.* So GE Money Bank did not impose, charge, or accrue any interest on Ms. Stratton's credit

card debt from the date of charge off through the date it sold the debt. *Id.* at ¶¶15-20. There was no dispute below that GE Money Bank waived its contractual right to charge interest on Ms. Stratton's credit card account during the thirteen months between charging off the credit card account and selling the resulting debt to PRA. Memorandum Opinion at 2, RE 17, **Page ID# 176.**

PRA argued and the district court agreed that GE Money Bank had both a contractual right to accrue interest and a statutory right under KRS 306.010 to accrue prejudgment interest on Ms. Stratton's credit card debt. The district court concluded that GE Money Bank could not impose and collect contractual interest and statutory prejudgment interest at the same time. But the district court then concluded that GE Money Bank could accrue statutory prejudgment interest on Ms. Stratton's credit card account after it had waived its contractual right to interest on the account. *Id.* at 6, **Page ID# 180** ("Although Stratton argues that contractual interest and statutory interest are 'mutually exclusive,' this does not establish that statutory interest was unavailable to GE because GE was no longer charging interest under the contract, leading to the logical conclusion that the lower rate of statutory interest would be collectible.").

The district court's construction of KRS 360.010 is not logical. The construction is contrary to the plain language of the statute, unconstitutionally

impairs the obligation of contracts, leads to an absurd result, and violates the provisions of TILA and the Kentucky law of assignments.

### i.     The District Court's Construction of KRS 360.010 is Contrary to the Plain Language of the Statute

KRS 360.010(1) provides:

> The legal rate of interest is eight percent (8%) per annum, but any party or **parties may agree, in writing, for the payment of interest in excess of that rate** as follows: (a) at a per annum rate not to exceed four percent (4%) in excess of the discount rate on ninety (90) day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve District where the transaction is consummated or nineteen percent (19%), whichever is less, on money due or to become due upon any contract or other obligation in writing where the original principal amount is fifteen thousand dollars ($15,000) or less, and (b) at any rate on money due or to become due upon any contract or other obligation in writing where the original principal amount is in excess of fifteen thousand dollars ($15,000); and **any such party or parties, and any party or parties who may assume or guarantee any such contract or obligation, *shall be bound* for such rate of interest as is expressed in any such contract…and *no law* of this state prescribing or limiting interest rates *shall apply* to any such agreement or to any charges which pertain thereto or in connection therewith**; provided, however, nothing herein contained shall be construed to amend, repeal, or abrogate any other law of this state pertaining to any particular types of transactions for which the maximum rate of interest is specifically prescribed or provided.

(Bolding and emphasis added).

The above language is clear and plain. When parties such as GE Money Bank and Ms. Stratton "agree, in writing, for the payment of interest in excess of the legal rate of 8% per annum," the parties "*shall be bound*" by that interest rate and "no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith."

The legal of 8% per annum set forth in KRS 360.010 is clearly a law that prescribes interest rates. So the legal rate of 8% per annum under KRS 360.010 does not and cannot apply to Ms. Stratton's credit card agreement or to any "charges which pertain thereto or in connection therewith." Because it had a written agreement with Ms. Stratton that gave it a contractual right to interest above the legal rate of 8% per annum, GE Money Bank could not have collected statutory prejudgment interest under KRS 360.010. *See Reliable Mech., Inc. v. Naylor Indus. Servs., Inc.*, 125 S.W.3d 856, 857 (Ky. Ct. App. 2003) ("Absent a contractually agreed upon rate, the appropriate rate of interest is governed by statute. KRS 360.010."); *accord Prosoft Automation, Inc. v. Logan Aluminum, Inc*., 2006 WL 1228773 (W.D. Ky. Apr. 28, 2006); *Thomas & Betts Corp., Inc. v. A & A Mech., Inc.*, 2008 WL 2696877 (Ky. Ct. App. July 11, 2008). The district court's construction of KRS 360.010 that GE Money Bank had both a contractual right and statutory right to prejudgment interest under KRS 360.010 is completely untenable and unconstitutional.

### ii.    The District Court's Construction of KRS 360.010 is Unconstitutional

The district court construed KRS 360.010 as allowing a creditor, which has waived a contract rate of interest, the right to elect to accrue and collect the legal rate of interest after waiver of the contract right to interest. This construction of the statute impairs the obligation of contracts in violation of Section 19 of the Kentucky Constitution. *Union Trust, Inc. v. Brown*, 757 S.W.2d 218 (Ky. Ct. App. 1988).

In *Brown*, the appellant Union Trust obtained default judgments against three different debtors on three different promissory notes with interest rates of 3.9%, 21.9%, and 19.9%. *Id.* at 219. In each case, however, the trial court entered judgment with post-judgment interest at the statutory rate of 12.00% per annum under KRS 360.040. Union Trust argued that it was entitled to the contract rate of interest on each judgment. The *Brown* Court agreed.

Very similar to prejudgment interest at the legal rate under KRS 360.010, post-judgment interest under KRS 360.040 provides that 12.00% per annum is the default interest rate on judgments, "but if [a judgment] rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%)."

Explaining the proper construction of KRS 360.040, the *Brown* Court stated:

> The first sentence of the statute dictates that the general rate of interest on a judgment is to be 12% per annum. The first clause of the second sentence allows suit to be

brought for principal and already accrued interest. For example, a suit to reduce back due child support to a judgment may be brought for the amount of child support owed, plus interest on that amount computed at 12% per annum from the date the amount became due. **The second clause of the second sentence removes suits brought to recover monies owed upon written obligations containing their own interest rates.** They are contracts. The stated rates of interest within them are obligations of the contracts. **It is therefore constitutionally beyond the general power of government to mandate a particular rate of interest for [contracts] or for judgments derived from [contracts].**

*Id.* at 220 (bolding added).

But the district court found it "logical" that the Kentucky General Assembly had the power to enact a statute that allows a creditor to pick and choose between a judgment awarding it a contract rate of interest or a statutory rate of interest. The district court's construction of KRS 360.010 is plainly unconstitutional under *Brown*. Thus, the district court's construction of the statute violates the rule of statutory construction that a court should not construe a statute "as intending an unconstitutional result if such a construction may be avoided." *Kentucky Utilities Co. v. Jackson County Rural Electric Cooperative Corp.*, 438 S.W.2d 788, 790 (Ky. 1968); *accord Lewis v. Quaker Chem. Corp.*, 2000 U.S. App. LEXIS 22321, 20 n.2 (6th Cir. Ky. Aug. 24, 2000) (citing *Chapman v. United States*, 500 U.S. 453, 114 L. Ed. 2d 524, 111 S. Ct. 1919 (1991)) ("As a general rule, statutes should be

presumed constitutional, and should be interpreted in such a way as to avoid an unconstitutional construction within the limits of the language of the statute.").

### iii. The District Court's Construction of KRS 360.010 Leads to an Absurd Result

Under the district court's construction of the statute, a creditor with a contract rate of less than the legal rate of 8% per annum could waive its lower contract rate of interest and then bring suit to recover the higher prejudgment interest rate of 8% per annum. This result brings the impairment of the right of contracts into sharp relief. Consequently, the district court's construction of KRS 360.010 violates another canon of statutory construction that "a statute should not be interpreted so as to bring about an absurd or unreasonable result." *James v. Severe-Duszynska*, 173 S.W.3d 250, 257 (Ky. Ct. App. 2005); *accord Griffin v. Oceanic Contractors*, 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982).

### iv. The District Court's Ruling Violates TILA

As the Court is aware, open-ended credit, like the GE Money Bank credit card account at issue in this case, is subject to extensive regulation under the Truth in Lending Act, 15 U.S.C. §1601.

Under the district court's construction of KRS 360.010, GE Money Bank could accrue interest on Ms. Stratton's credit card account at the legal rate of 8% per annum without sending Ms. Stratton any periodic statements or giving her any notice that it was accruing interest at the legal rate. Had GE Money Bank actually accrued statutory interest on Ms. Stratton's credit card account after charging off the account, GE Money Bank would have been in clear violation of TILA.

After charging off Ms. Stratton's credit card account, GE Money Bank could have continued to accrue interest on Ms. Stratton's credit card account. But as required by Regulation Z, 12 C.F.R. §226 *et seq.*, as it was in effect at the time that GE Money Bank charged off Ms. Stratton's credit card account, if GE Money Bank continued to impose finance charges on the account in the form of contract interest or fees, GE Money Bank was required to send Stratton periodic statements required by 12 C.F.R. §226.7. On the other hand, Regulation Z gave GE Money Bank the option to relieve itself of the obligation of sending periodic statements after charge off. 12 C.F.R. §226.5(b)(2)(i) (2008) provides:

> **(2) Periodic statements. (i)** The creditor shall mail or deliver a periodic statement as required by § 226.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. A periodic statement need not be sent for an account if the creditor deems it uncollectible, or if delinquency collection proceedings have been instituted, or if furnishing the statement would violate Federal law.

12 C.F.R. § 226.5(b)(2) (2009).

Prejudgment interest under KRS 360.010 clearly falls within TILA's extremely broad definition of "finance charge," which was the same in 2008 as it is today:

> The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a) (2008).

As explained by American Jurisprudence Second:

> Prejudgment interest is normally designed to make the plaintiff whole, and is part of the actual damages sought to be recovered. Such interest is merely another element of pecuniary damages, and is in the nature of compensatory damages. **Prejudgment interest is not a penalty, but simply a cost of having the use of another person's money for a specified period**; such interest is intended to indemnify successful plaintiffs for the nonpayment of what was due to them, and is not meant to punish defendants.

22 Am. Jur. 2d *Damages* § 462 (updated February 2013); *see also* 47 C.J.S. *Interest & Usury* § 106 (updated September 2012) ("The essential rationale of awarding prejudgment interest is to ensure that the injured party is fully compensated for its

loss"). That is, prejudgment interest reflects the time-price differential for the use of money. Kentucky law is completely in accord on this point.

In affirming the trial court's award of compounded prejudgment interest, the Kentucky Court of Appeals in *Reliable Mechanical* explained:

> We agree with the trial court's conclusion that under the particular circumstances of this case, fairness justifies and indeed dictates an award of compound pre-judgment interest**. Reliable has deprived Naylor of the use of the money rightfully due and owed to it for nearly eight (8) years.** Arguably, Naylor would have been capable of earning compound interest on its money during this lengthy time period.

*Reliable Mech., Inc.*, 125 S.W.3d at 858 (emphasis added). The *Reliable Mechanical* Court clearly and plainly turns on the equity and fairness of compensating the appellee for its loss of use of funds.

Finally, the C.F.R. provides an example of "finance charge" that leaves no doubt that prejudgment interest under KRS 360.010 is a finance charge under TILA:

> **Example of finance charge.** The finance charge includes the following types of charges, except for charges specifically excluded by paragraphs (c) through (e) of this section … Interest, time price differential, and any amount payable under an add-on or discount system of additional charges.

12 C.F.R. § 226.4(b)(1) (2008).

-23-

So under TILA and Regulation Z as it was in effect at the time that GE Money Bank charged off Ms. Stratton's credit card account, GE Money Bank was required to send her periodic statements if it was in fact charging and accruing prejudgment interest under KRS 360.010 on Ms. Stratton's credit account *unless* GE Money Bank had deemed the debt uncollectible.

As alleged in the first amended complaint, the facts of this case clearly and plainly support the conclusion that GE Money Bank did not deem Ms. Stratton's debt uncollectible. The first amended complaint alleges that "GE Money Bank did not charge or impose *any interest* on Ms. Stratton's Lowes credit card account during the thirteen-month period between charging off the account on December 19, 2008 and the sale or assignment of the account to PRA on January 15. 2010." Amended Complaint, RE 10, **Page ID# 92** (emphasis added). That GE Money Bank did not accrue any interest, including statutory prejudgment interest, between charging off the debt and the sale of the debt is further supported by the Exhibits to the first amended complaint. These exhibits establish that the amount due on the debt was the same on the date of charge as it was thirteen months on the date of sale to PRA. This foregoing strongly implies that GE Money Bank waived its right to impose a finance charge on Ms. Stratton's credit card debt in order to relieve itself of the obligation of sending her periodic statements rather than because it deemed the debt uncollectible.

Next, a rational business entity does not sue to collect a debt that the entity has deemed to be uncollectible. It is tantamount to fraud to sell an uncollectible debt to another for the purpose of collection. And certainly PRA is not in the business of buying debts that it has determined to be uncollectible. Rather, the evidence in this case strongly supports the conclusion that GE Money Bank stopped sending Ms. Stratton periodic statements to avoid the "expense of sending periodic statements to account holders," and because it "was good economics and…a 'good customer practice.'" *McDonald v. Asset Acceptance LLC*, 2013 U.S. Dist. LEXIS 110829 at *26-27, 2013 WL 4028947 (E.D. Mich. Aug. 7, 2013) (summarizing and quoting the testimony of Thomas Henry, director of recovery management and strategy for Chase Card Services). The "good economics" that flow from ceasing to accrue any interest on a debt are many.

Banks are required to charge off "open-end credit" such as credit card accounts "at 180 days delinquency." Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903. A "charge-off" means that the debt can no longer be carried at face value as an asset on the bank's books, in order to avoid misleading bank examiners into thinking that the bank is more stable than it is. Importantly, a "charge-off" does not affect the bank's right to collect the debt or charge interest on the debt. But once a bank charges off an "open end credit" account, the account becomes a "loan loss" for which a bank is required to make allowances.

*See id.* at Supplementary Information: Background Information ¶3 ("As a result of changes the Uniform Policy made to the 1980 policy, an institution may need to adjust its loan loss allowance to reflect any shortening in its time frame for recording charge-offs.").

Continuing to accrue interest on Ms. Stratton's credit card would have increased the amount of bad debt or loan loss that GE Money Bank would have been required to report to bank examiners. Banks regulated by the FDIC (including GE Money Bank) must maintain an "allowance for loan and lease losses" (or "ALLL") in order to guard against the effect of defaults. Risk Management Manual of Examination Policies at Section 3.2 – Loans. This means that an increase the amount of bad debt or loan losses on its books would require GE Money Bank to increase its reserves to offset the losses. *Id.* Also a large amount of bad debt negatively affects a bank's health, and increases the possibility of regulatory action. Finally, "[t]his practice also permitted [GE Money Bank] to remove the account from the financial records and receive a bad debt tax deduction." *McDonald*, 2013 U.S. Dist. LEXIS 110829 at 28 (citing the Internal Revenue Code, 26 U.S.C. § 166(a)(2)). While Ms. Stratton's particular credit card account would have had *de minimis* impact on these concerns by itself, these concerns become very real and significant in connection

with the total amount of loan losses GE Money Bank incurs as the result of charged-off credit card accounts.[2]

Consequently, GE Money Bank received real and tangible benefits from its decision to waive its right to charge, impose and accrue interest on Ms. Stratton's credit card account after charging it off.[3] The definition of "finance charge" makes clear that GE Money Bank's decision to waive interest includes both contractual and statutory interest, assuming GE Money Bank had a right to statutory interest. Indeed, the record in this case demonstrates that the face amount due on Ms. Stratton's credit card account was the same exact amount on the day that GE Money Bank charged off the debt and the day that GE Money Bank sold the resulting debt to PRA. So the first amended complaint and exhibits clearly establish that GE Money Bank waived its right to interest—both contractual and statutory—after charging off Ms. Stratton's credit card account.

### v.     The District Court's Ruling Violates Kentucky's Law of Assignments

---

[2] Credit card accounts represent over 81% of GE Money Bank's outstanding loan portfolio. GE Money Bank's gross losses from charged-off credit accounts is over 6% of its total loan portfolio. http://www.bankspider.com/chargeoffs/ge-money-bank-chargeoffs.html (visited July 14, 2013).

[3] GE Money Bank would lose these benefits by continuing to accrue interest on Ms. Stratton's credit card account under KRS 360.010 to absolutely no tangible benefit if it had deemed the debt uncollectible. Interest on an uncollectible debt has no more value as an asset than does the principal. In other words, it would have been wholly irrational for GE Money Bank to continue to accrue interest on an uncollectible debt.

As demonstrated above, GE Money Bank did not and could not have had a right to prejudgment interest at the legal rate under KRS 360.010 from the dates of charge off through the sale of the debt. But under the district court's ruling, PRA does have a statutory right to accrue and collect prejudgment interest during the same time period. That is, under the district court's ruling, PRA has rights against Ms. Stratton greater than those possessed by GE Money Bank.

Under Kentucky law, GE Money could not sell, assign, or transfer rights against Ms. Stratton that GE Money Bank did not have. *See Whayne Supply Co. v. Morgan Const. Co*., 440 S.W.2d 779, 782-83 (Ky. 1969) (holding that "an assignee … acquires no greater right than was possessed by his assignor, … but simply stands in the shoes of the latter, subject to all equities and defenses which could have been asserted against the chose in the hands of the assignor at the time of the assignment"). The district court's construction of KRS 360.010 violates this basic law.

## B.    PRA's Allegations in its State-Court Complaint were not Aspirational

PRA's claim in Paragraph 4 of its state-court complaint that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until the date of judgment" is an affirmative allegation made in the body of the state-court complaint. The district court repeatedly misconstrued this as an aspirational request made in the state-court complaint's prayer for relief. PRA and

the district court failed to appreciate the substantive differences between a prayer for relief and substantive allegations made in a complaint.

An "allegation" means "[s]omething declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved," whereas "a prayer for relief" means "[a] request addressed to the court and appearing at the end of a pleading; esp., a request for specific relief or damages." Black's Law Dictionary (9th ed. online 2009). So PRA averred as a matter of fact that that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008 until the date of judgment." The differences between affirmative allegations in a complaint and requests for relief in a prayer for relief readily distinguish this case from *Argentieri v. Fisher Landscape, Inc*., 15 F.Supp.2d 55 (D.Mass. 1998), upon which the district court relied.

### i.    *Argentieri* **is Distinguishable**

*Argentieri* had its genesis with a contract between a homeowner and a landscape company "to build walkways, a retaining wall and a patio." *Id*. at 57-58. A dispute arose between the parties and the landscape company brought suit against the homeowner. *Id*. at 58. The landscape company's "complaint alleged approximately $6,590 in damages, and contained an *ad damnum* request for interest,

costs and attorney's fees." *Id.* The homeowner later brought suit against the law firm that filed suit on behalf of the landscape company alleging that the landscape complaint violated the FDCPA because the prayer for relief included a claim for attorney's fees. *Id.*

In concluding that the homeowner's complaint did not state a claim upon which relief could be granted, the *Argentieri* Court explained:

> [I]t is abundantly clear to me that a request for attorney's fees under the circumstances of this case does not violate the FDCPA. A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself. A request for attorney's fees ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation.

*Id.* at 61.

PRA's affirmative averments in its state-court complaint were not mere requests to the court. The averments were false allegations of fact and truth. So PRA's allegation against Ms. Stratton in its state court complaint is far different from the request for attorney's fees in the prayer for relief at issue in *Argentieri*.

Finally, many courts expressly reject *Argentieri*. *See e.g. McCollough v. Johnson, Rodenberg & Lauinger*, 587 F. Supp. 2d 1170, 1178 (D. Mont. 2008) *aff'd sub nom. McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) ("As a practical matter, here the complaint states 'plaintiff demands

judgment against the defendant for ... collection costs/attorney fees of $481.68[.]' From the standpoint of a least sophisticated debtor-or a lawyer-it is plain from whom JRL demands attorney fees."); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 802 (S.D.Ohio 2006). (ruling that demanding attorney's fees in a complaint's prayer relief "constitute[d] an absolute entitlement to attorney fees, even though such fees are not recoverable under Ohio law"); *Jarvis v. First Resolution Inv. Corp.*, 2012-Ohio-5653, P40, 2012 Ohio App. LEXIS 4904, 2012 WL 6042693 (Ohio Ct. App., Summit County 2012).

Clearly under the least-sophisticated-consumer standard, most, if not all, consumers and attorneys alike would interpret Paragraph 4 of PRA's state-court complaint as an affirmative statement that Ms. Stratton owed PRA "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008." This statement is a "false, deceptive, or misleading representation" made by PRA in connection with an attempt to collect a debt from Ms. Stratton, which violates the FDCPA.

## IV.    Ms. Stratton's First Amended Complaint States Valid Claims for Relief under the FDCPA

The first amended complaint alleges in pertinent part:

Plaintiff Dede Stratton is a "consumer" within the meaning of the FDCPA. Amended Complaint at ¶6, RE 10, **Page ID# 91**. PRA is a "debt collector" within the meaning of the FDCPA. *Id.* at ¶¶4-5.

PRA's state-court complaint filed against Ms. Stratton was an attempt to collect a "debt" from Ms. Stratton as defined by the FDCPA. *Id.* at ¶8.

PRA violated the FDCPA by attempting to collect interest from her to which it had neither a contract nor statutory right to collect. *Id.* at ¶¶23 and 34, **Page ID# 93**. In particular the first amended complaint alleges that PRA's actions violated the FDCPA including but not limited to the following specific sections: 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692f(1), and 15 U.S.C. § 1692e(5). *Id.* at ¶¶51-52, **Page ID# 95-96.** Ms. Stratton's first amended complaint states a valid claim for PRA's violations of each of these sections of the FDCPA.

### A.    Violation of 15 U.S.C. § 1692e(2)(A)

In order to demonstrate PRA's violation of § 1692e(2)(A), we need to first address one important aspect of  KRS 360.010 that the district court got right: KRS 360.010 is not self-executing.

### i.    KRS 360.010 is not Self-Executing

In its motion to dismiss, PRA repeatedly characterized its state-court complaint as a "request" that the trial court award it prejudgment interest at the legal rate of 8% per annum from the date of charge off and that the trial court had the discretion to deny the request. For example, PRA argued in pertinent part:  "the sole issue here is whether PRA's mere <u>request</u> to a state court judge for an award of statutory prejudgment interest, which the state court judge had discretion to award,

constitutes a violation of the specific FDCPA sections set forth in Ms. Stratton's Amended Complaint." Motion to Dismiss at 10-11, RE 12, **Page ID# 110-11** (emphasis in original). The district court construed KRS 360.010 consistently with this argument and agreed that PRA's complaint was a request "for prejudgment interest, which could have been denied if improper." Memorandum Opinion and Order at 10, RE 17, **Page ID# 184.**

The district court's ruling necessarily means that PRA did not have a present right to collect prejudgment interest under KRS 360.010 prior to an entry of a judgment in its favor awarding it prejudgment interest at the legal rate. In other words, like post-judgment interest under KRS 360.040, prejudgment interest under KRS 360.010 constitutes compensation that can only be obtained through a duly entered judgment and a creditor has no right to charge and collect statutory prejudgment interest prior to filing suit and receiving judgment in its favor. KRS 360.010 is not a self-executing statute. Other jurisdictions construe similar prejudgment-interest statutes the same. *See e.g. McCabe v. Eichenbaum & Stylianou, LLC*, CIV.A. 11-7403 MAS, 2012 WL 6624229 (D.N.J. Dec. 19, 2012) ("[T]he assessment of prejudgment interest is a matter of discretion for the trial court, not the parties involved. *Pignataro v. Port Auth.*, 593 F.3d 265, 274 (3d Cir.2010). Defendants, therefore, are not entitled to charge prejudgment interest [prior to judgment] and Plaintiff was possibly charged an undocumented fee in

violation of the FDCPA."); *Nikkel v. Wakefield & Associates, Inc*., No. 10-CV-02411-PAB-CBS, 2012 WL 5571058 (D. Colo. Nov. 15, 2012) (holding that because a debt collector "had not yet secured a judgment on" a debt, "Colo.Rev.Stat. § 5–12–102[4] is inapplicable").

Therefore, the district court correctly construed KRS 360.010 such that a creditor may not collect interest at the legal rate absent a judgment awarding the creditor prejudgment interest at the rate of 8% per annum. But the district incorrectly concluded that PRA's affirmative allegations in its state court complaint did not falsely represent "the character, amount, or legal status" of Ms. Stratton's debt.

### ii.    The Allegations in PRA's State Court Complaint Falsely Represent the Character, Amount, or Legal Status of Ms. Stratton's Debt

§ 1692e(2)(A) provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section…[t]he false representation of— the character, amount, or legal status of any debt.

---

[4] Similar to KRS 360.010, Colo. Rev. Stat. Ann. § 5-12-102(2)  provides:

> When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

PRA's affirmative allegation in ¶4 of the state-court complaint falsely represent the character, amount, or legal status of Ms. Stratton's debt in two ways: (1) the allegation falsely states that Ms. Stratton owes PRA 8% per annum for the thirteen month period between the date of charge off and the date of the sale of the debt; and (2) the allegation falsely alleges that she currently and presently owes PRA 8% on the principal amount of the debt from the date of charge off. This latter allegation is false because PRA had no present right to collect prejudgment interest at the legal rate of 8% per annum until and unless it was awarded prejudgment interest as damages in a judgment.

### A.    Violation of 15 U.S.C. § 1692f(1)

§ 1692f(1) plainly states that the collection of *any* amount to which a debt collector is not legally entitled to collect is unfair and unconscionable:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> **(1)** The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law.

PRA's state-court complaint is an attempt to collect a debt from Ms. Stratton.[5] Paragraph 4 of PRA's state-court complaint affirmatively states that Ms. Stratton owes PRA the principal amount of "$2,630.95, with interest thereon at the rate of 8% per annum from December 19, 2008." The complaint was attempt to collect both principal and interest part and parcel. Because PRA had neither a contract nor a statutory right to collect prejudgment interest at the legal rate of 8% per annum on Ms. Stratton's debt during the time period before it acquired the debt, PRA's state-court complaint constitutes a plain violation of 15 U.S.C. § 1692f(1).

Attempts to collect even very small interest overcharges violate the plain language of § 1692f(1). *Duffy v. Landberg*, 215 F.3d 871, 875 (8th Cir. 2000). In *Duffy*, the debt collector sent the debtor appellants dunning letters that overstated interest charges in the amount of $1.29, $1.84, and $.65. *Id.* at 874. Finding that these letters violated the FDCPA, the *Duffy* Court explained that "although the interest calculations were admittedly only slightly overstated, the letters seeking

---

[5] "It is well settled that the FDCPA applies to the litigating acts of an attorney, including the filing of a complaint on behalf of a creditor." *Sanz v. Fernandez*, 633 F. Supp. 2d 1356, 1360 (S.D. Fla. 2009) (citing *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995); see also *Fuller v. Becker & Poliakoff, P.A.*, 192 F.Supp.2d 1361, 1368 (M.D.Fla.2002)); *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28-29 (6th Cir. 2007) (*Gionis* is discussed extensively *infra*).

these overstated interest charges were nonetheless an attempt to collect interest not permitted by law, and therefore a violation of the plain language of section 1692f(1)." *Id.* at 875. *Accord Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) (holding that interest and late charges imposed by the collection agency exceeded a state limitation of 10% and violated the FDCPA); *Cadle Co. v. Steiner*, 2011 WL 925450 (Conn. Super. Ct. Feb. 10, 2011) (holding that the debt collector's demand of improperly calculated interest in excess of that allowed by statute violated the FDCPA); *Melillo v. Shendell & Assocs., P.A.*, 2012 WL 253205 (S.D. Fla. Jan. 26, 2012) (holding that the complaint stated a § 1692f claim by alleging that the defendant sent a dunning letter that sought to collect five months of interest when only three months of interest would have been due); *Egletes v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 3025236 (D. Conn. July 30, 2010) (holding that where the defendant attempted to garnish wages with interest on the judgment when the judgment struck a provision for interest, it was "inexcusable" for the collection lawyers to seek interest); *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass. 2002) (holding that purchaser of defaulted note violated the FDCPA by demanding interest even though it had no documents on which it could determine how much interest it was entitled to demand); *Carrizosa v. Stassinos,* 2010 WL 144807 (N.D. Cal. Jan. 10, 2010) (granting summary judgment on the consumers' § 1692f(1) claim where

the debt collector attempted to collect both prejudgment interest and treble damages when state law prohibited the collection of both amounts).

### C.    Violation of 15 U.S.C. § 1692e(5)

The district court construed 15 U.S.C. § 1692e(5) as applying only to threats and not to completed actions. There is a split of authority on the issue. Several courts hold that "§ 1692e(5) covers completed illegal acts as well as the threats to commit those acts." *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 136 (D. Mass. 2007) (citing *Poirier v. Alco Collections, Inc.,* 107 F.3d 347, 350-51 (5th Cir.1997); *accord Marchant v. U.S. Collections West, Inc.,* 12 F.Supp.2d 1001, 1006 (D.Ariz.1998) ("defendants assert that they made no threat; they simply took action. I think that such argument elevates form over substance. To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority . . . would defy the very purposes of the section."); *Foster v. D.B.S. Collection Agency,* 463 F.Supp.2d 783, 803 (S.D.Oh.2006); ("when a collection agency engages in the unauthorized practice of law [by filing suit in violation of state law], it constitutes an 'action that cannot legally be taken' within the meaning of the FDCPA."); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (Debt collection company's filing of state court lawsuits against debtors, without first obtaining necessary license under Maryland Collection Agency Licensing Act violated the FDCPA).

Unsurprisingly, Ms. Stratton believes that the above cases, which elevate substance and common sense over form, represent the more rational and reasoned interpretation of §1692e(5). This Court appears to have accepted this view in *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28-29 (6th Cir. 2007).

In *Gionis*, Gionis, the plaintiff in the underlying district court case, defaulted on a credit card agreement with Direct Merchants. *Id.* at 28. Direct Merchants hired Javitch to collect the debt. *Id.* Javitch then filed suit against Gionis in Ohio state court. *Id.* Javitch's complaint did not mention attorney's fees, but it attached an "Affidavit of Indebtedness & Debt & Non-Military & Contract" which provided in pertinent part:

> The [credit card] agreement specifically provides that Direct Merchant's Credit Card Bank is entitled to recover, *to the extent permitted by applicable law,* its reasonable attorney's fees and costs incurred in any action to enforce its rights under the agreement.

*Id.* (emphasis in original).

Direct Merchants could not recover attorney's fees in the action under Ohio law. *Id.* Gionis filed suit against Javitch alleging that Javitch violated the FDCPA "by attaching the threatening and misleading Affidavit to the state court complaint." *Id.* The Court expressly rejected Javitch argument that the affidavit did not violate § 1692e(5):

**In a strict sense, neither § 1692e(5) nor § 1692e(10) has been violated here.** The Affidavit only says Direct Merchant "is entitled to recover, to the extent permitted by applicable law, its reasonable attorney's fees and costs incurred in any action to enforce its rights under the agreement." Because the credit card agreement (though not the Affidavit) defines "applicable law" as "federal law, and laws of Arizona," and because the case was filed in Ohio, there was (technically speaking) no "threat to take any action that cannot legally be taken," § 1692e(5) (emphasis added), nor "use of any false representation or deceptive means to collect" Gionis's debt, § 1692e(10).

\*    \*    \*    \*    \*

Yet the threatening language appeared in a court filing-where one seeks remedies, not make empty threats-and that arguably could be understood by the least sophisticated consumer as an actual "attempt" to collect attorney fees (not a "threat" per se) and thus not actionable under § 1692e(5). See § 1692e(5) (prohibiting the "threat to take any action that cannot legally be taken" (emphasis added)). After all, "What other reason would the statement appear in a court proceeding if Javitch were not attempting to collect attorney fees?," the consumer may again ask. A few lower courts, in fact, have refused to find a violation under § 1692e(5) where "[d]efendants did not threaten to take [an unlawful] action, but actually took it by filing the complaint." See, e.g., *Delawder v. Platinum Fin. Servs. Corp.*, 443 F.Supp.2d 942, 948 (S.D.Ohio 2005) (emphasis in original) and cases cited therein

**But in this context, "attempts" and "threats" are not necessarily mutually exclusive concepts, for when we keep the Act's overarching principles in mind-"to**

-40-

> **eliminate abusive debt collection practices by debt
> collectors," § 1692(e), and to prevent "false, deceptive,
> or misleading representation [,]" § 1692e-whether the
> Affidavit's metaphysical description is more an
> "attempt" or more a "threat" is essentially wordplay.**
> No semantical recasting alters the intimidating effect on
> the least sophisticated consumer: that she "would be
> confused, and reasonably might feel pressured to
> immediately pay the debt, even if she disputed its validity,
> in order to avoid the possibility of having to also pay [the
> debt collector's] attorney fees at some later date." *Gionis
> v. Javitch,* 405 F.Supp.2d 856, 867 (S.D.Ohio 2005).
>
> \*    \*    \*    \*    \*
>
> Accordingly, we conclude that Javitch made a "threat to
> take an [ ] action that cannot legally be taken," in violation
> of § 1692e(5), which also amounted to "false
> representation or deceptive means to collect or attempt to
> collect a[ ] debt[,]" in violation of § 1692e(10).

*Id.* at 28-30 (emphasis added).

The Court should adopt the reasoning of *Gionis* and rule that PRA's attempt

to collect unlawful interest on Ms. Stratton's debt violates § 1692e(5).

## V.    The First Amended Complaint Alleges the GE Money Bank Waived all Interest on Ms. Stratton's Credit Card Account after Charging off the Debt

Assuming *arguendo* GE Money Bank had a statutory right to accrue

prejudgment interest under KRS 360.010, the first amended complaint states a valid

claim based on GE Money Bank's waiver of statutory prejudgment interest. The district court erred in ruling otherwise.

The first amended complaint alleges that GE Money did not charge any interest on Ms. Stratton's credit card account after it charged it off. Amended Complaint at ¶19, RE 10, **Page ID# 92.** *Any interest* necessarily includes both contractual and statutory interest. This allegation is based on the demonstrable fact that the face amount due on Ms. Stratton's credit card debt, $2,630.95, was the same on the day that GE Money Bank charged off the debt (12/19/2008) as it was on the day that PRA acquired the debt (1/15/2010). This is established by PRA's own documents, including the Davis Affidavit, dated April 5, 2012, that avers that $2,630.95 was still the total amount due and owing on Ms. Stratton's credit card debt as of April 5, 2012. Davis Affidavit, RE 10-2, **Page ID# 99.** PRA's data sheet also establishes that the charge off amount and the current balance of the debt was the exact same amount as of 1/15/2010. **Data Sheet**, RE 10-3, **Page ID# 100**. In other words, as reflected in its own records, PRA did not purchase or acquire any accrued statutory prejudgment interest on Ms. Stratton's credit card debt from GE Money Bank.

Next, the first amendment complaint's claims for relief clearly and plainly allege that PRA violated the FDCPA by attempting to collect 8% prejudgment interest on Ms. Stratton's debt for time period in which the original creditor, GE

Money Bank, did not accrue *any* interest on Ms. Stratton's credit card account. Amended Complaint at ¶52, RE 10, **Page ID# 95-96**.

Finally, the reasons why GE Money Bank would voluntarily waive its right to charge interest on Ms. Stratton's credit account are equally applicable to both contractual and statutory interest. *See* Section III(A)(iv) *supra.*

So the first amended complaint alleges and demonstrates that GE Money waived its right to charge any and all interest on Ms. Stratton's credit card account after charging off her credit card account, including any statutory interest. And Ms. Stratton's FDCPA claims against PRA are squarely based on PRA's attempts to collect interest that GE Money Bank did not accrue on the debt. The first amended complaint states a valid claim for PRA's violations of the FDCPA by falsely representing the amount that Ms. Stratton owed on the debt and by attempting to collect interest to which it had neither a contractual nor statutory right to collect from her regardless of GE Money Bank's reason for not accruing interest on the debt, *i.e.* because GE Money Bank had no right to prejudgment interest under KRS 360.010 on Ms. Stratton's credit card account or because GE Money Bank voluntarily waived its right to prejudgment interest under the statute.

### Conclusion and Relief Requested

For the reasons set forth above, the Court should render an opinion that construes KRS 360.010 as follows:

- KRS 360.010 does not create a self-executing right that allows a creditor to accrue and collect prejudgment interest at the legal rate of 8% per annum prior to entry of a judgment awarding the creditor prejudgment interest at the legal rate; and

- Parties to a written contract that provides for interest are bound by the contractual interest rate and, therefore, KRS 360.010 has no application when such a contract exists.

Based on the proper and correct construction of KRS 360.010 as set forth above, the Court should then REVERSE the district court's Order Dismissing Ms. Stratton's first amended complaint with prejudice and REMAND for further proceedings consistent with the Court's Opinion.

Respectfully submitted,

January 26, 2014

/s/ James H. Lawson
James H. Lawson
*Attorney for Appellant*

**Certificate of Compliance with Fed. R. App. P. 32(a)(7)(C)**

I hereby certify that the Appellant's brief submitted this 26th day of January, 2014, complies with the type-volume limitation. The brief was prepared using Microsoft Word, which reports that the brief consists of 10,610 total words.

/s/ James H. Lawson
James H. Lawson
*Attorney for Appellant*

## Certificate of Service

    I hereby certify that Appellant's brief was served this 26th day of January, 2014 via email to Joseph N. Tucker, *Dinsmore & Shohl, LLP*, 25th Floor, 101 S. Fifth Street, Louisville, KY 40202. joseph.tucker@dinsmore.com.

                        /s/ James H. Lawson    
                        James H. Lawson
                        *Attorney for Appellant*

**Designation of Relevant District Court Documents with Page ID # Range**


First Amended Complaint and Exhibits, RE 10, **Page ID# 90-100**

PRA's Second Motion to Dismiss, RE 12, **Page ID# 101-17**

Memorandum Opinion and Order, RE 17, **Page ID# 175-91**